IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-314-8442 (TT1) | Case No. 1:19-mj- 7<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

This Affiant, Adam Baldwin, Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, states the following:

**INTRODUCTION AND AGENT BACKGROUND**

1. I, Adam Baldwin, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since August 2014. In addition to my employment with ATF, I have over three years of law enforcement experience with the Pentagon Force Protection Agency (PFPA). During my tenure with PFPA, I served two years as a police officer in multiple capacities, to include patrol, surveillance detection, and as a law enforcement liaison to the Director of PFPA. I additionally served approximately one year as a special agent with PFPA, conducting complex criminal and protective intelligence investigations, as well as conducting domestic and international protective missions. I am a graduate of the Federal Law Enforcement Training Center (FLETC) Uniformed Police Training Program (UPTP), Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with

Page 1 of 12

Case 1:19-mj-00007-SKL   Document 2   Filed 01/24/19   Page 1 of 15   PageID #: 5

respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Criminal Justice from East Tennessee State University, and a Master of Science in Criminal Justice from The University of Tennessee at Chattanooga.

2. This affidavit is submitted in support of an application for a search and seizure warrant for information associated with certain accounts that are stored at premises owned, maintained, controlled, or operated by T-Mobile, a wireless provider headquartered at 4 Sylvan Way Parsippany, NJ. The information to be searched is described herein and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), using the procedures described in Rule 41 of the Federal Rules of Criminal Procedure, to require T-Mobile to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications. The information contained in this affidavit has been obtained through observations by your Affiant, as well as from interviews with fellow law enforcement officers, and an ATF Confidential Informant (CI), and Cooperating Defendant. Not every fact known to your Affiant regarding the case has been included in the affidavit. Your Affiant has only included information and facts needed for the court to make a finding of probable cause.

3. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items

commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

4. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is

evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

5. Based on training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

6. Based on your Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 USC § 841(a)(1) and Title 26 USC § 846 have been committed by Jason JOHNSON, AKA "Boss P," (hereinafter JOHNSON) and other known and unknown co-conspirators. There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## PROBABLE CAUSE

7. Your Affiant is currently participating in an investigation of an armed drug trafficking organization (ADTO) in the Eastern District of Tennessee (EDTN). An investigation

Page 4 of 12

Case 1:19-mj-00007-SKL   Document 2   Filed 01/24/19   Page 4 of 15   PageID #: 8

conducted by the ATF has identified several individuals as operating in the EDTN, and as being involved in a conspiracy to distribute large quantities of methamphetamine (meth) and the illegal possession and use of firearms during narcotics-related activity. One of the co-conspirators and sources of supply for meth involved in the investigation, JOHNSON, has further been identified as using a cellular device associated with telephone number 423-314-8442 (hereafter referred to as TT1) to arrange narcotics transactions. The investigation was initiated by the development of information given by an ATF Confidential Informant (CI), as well as co-conspirators in the investigation. The information provided the by CI and the co-conspirators has been independently corroborated by other agents/officers as accurate. Such information has been corroborated through records analysis, surveillance conducted by your Affiant and other law enforcement officers, as well as review of historical case information. Accordingly, your Affiant submits that information provided is reliable.

8. On or about January 14, 2019, your Affiant, with the assistance of East Ridge Police Department (ERPD) Detectives, conducted a custodial interview of Patrick LAWRENCE, AKA "Lowrance," (hereinafter LAWRENCE). LAWRENCE had previously been identified in December 2018 by an ATF CI as a large-scale distributor of methamphetamine in the EDTN. During the interview, LAWRENCE admitted to being a large-scale distributor of methamphetamine throughout the EDTN. LAWRENCE also identified one of his sources of supply for methamphetamine as Jason JOHNSON, AKA "Boss P," (hereinafter JOHNSON). According to LAWRENCE, he was last supplied a resale amount of methamphetamine by JOHNSON the previous evening, January 13, 2019. LAWRENCE additionally confirmed that JOHNSON will frequently utilize TT1, via voice calls and text messages, to orchestrate methamphetamine transactions. LAWRENCE continued that while JOHNSON does text, if

LAWRENCE arranges a drug deal with JOHNSON via text, JOHNSON will sometimes respond via voice call as opposed to text message. LAWRENCE also confirmed to your Affiant that he arranged the aforementioned drug deal with JOHNSON on January 13, 2019, via TT1 by both text message and voice calls.

9. LAWRENCE additionally provided your Affiant written and verbal consent to view his cellular device. A review of the call logs and text message logs for LAWRENCE's phone corroborated LAWRENCE's statements regarding JOHNSON's involvement in the distribution of methamphetamine. Specifically, your Affiant viewed several text messages sent to TT1 from LAWRENCE between January 8, 2019 and January 13, 2019, which, according to LAWRENCE, were in reference to methamphetamine purchases from JOHNSON. The messages are as follows:



Page **6** of **12**

10. Your Affiant knows, based on training and experience, as well as information obtained throughout the course of the investigation, to include statements by LAWRENCE, that LAWRENCE's reference to needing a "half" in a text message to TT1 on January 8, 2019, was in reference to a half-ounce of methamphetamine.

11. In addition to the review of the text message logs, your Affiant also reviewed LAWRENCE's incoming and outgoing call log with TT1. The following is an excerpt from the call log:



12. During the review of the call log, your Affiant viewed numerous incoming and outgoing calls exchanged between LAWRENCE and TT1 on January 13, 2019. When asked about the call logs, LAWRENCE confirmed to your Affiant that the calls were in reference to orchestrating the aforementioned drug deal with JOHNSON on January 13, 2019.

13. In addition to the aforementioned investigative techniques, JOHNSON, a convicted felon, is known by other law enforcement agencies operating in the EDTN to be a large-scale distributor of methamphetamine and frequently be in possession of firearms. Specifically, JOHNSON is currently under indictment for violations of State of Tennessee narcotics and firearms laws stemming from a State search warrant at a residence associated with JOHNSON in McMinn County, TN. During the execution of the warrant, law enforcement recovered a large quantity of methamphetamine consist with resale, as well as multiple firearms from the property.

14. Your Affiant, with the assistance of other law enforcement officers, have attempted on numerous occasions to conduct surveillance on members of the ADTO. The surveillance operations were conducted in an attempt to establish patterns of activity for members of the organization, as well as identify additional co-conspirators of the ADTO involved in the distribution of meth and illegal possession and use of firearms. During the surveillance operations, on multiple occasions, at least one member of the organization was witnessed by your Affiant frequently switching vehicles after meeting with unknown individuals, as well as driving at high rates of speed during heavy traffic. Furthermore, information obtained from surveillance also indicated that members of the ADTO frequently reside at various hotels in the Chattanooga, TN area in rooms that are not listed under their names. Based on such information, your Affiant submits that traditional surveillance techniques, to include mobile and fixed surveillance, as well as a vehicle GPS tracking device, would prove unsuccessful in identifying members' patterns of activity regarding narcotics distribution, as well as additional co-conspirators.

15. Your Affiant is aware that most individuals today carry their cellular telephones when traveling. Allowing law enforcement officers to track the movements of the Target Cell phone will aid agents in gathering information regarding the federal crime(s) listed above. Furthermore, your Affiant submits that probable cause exists to allow tracking of the Target Cell phone for at least the next thirty days, as the above information indicates that JOHNSON is involved in the ongoing distribution of meth over TT1.

16. In your Affiant's training and experience, your Affiant has learned that T-Mobile is a company that provides cellular telephone access to the general public. Your Affiant also knows that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

17. In your Affiant's training and experience, your Affiant has learned that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile network or with such other reference points as may be reasonably available.

18. In your Affiant's training and experience, your Affiant has learned that T-Mobile can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

19. Based on the foregoing, your Affiant requests that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20. Your Affiant further requests, pursuant to 18 U.S.C. §§ 2705 and 3103a(b), that the Court enter a non-disclosure order, delaying notice to JOHNSON or the subscriber of TT-1 for a period of 90 days. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

21. Your Affiant further requests that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession,

Page **10** of **12**

Case 1:19-mj-00007-SKL   Document 2   Filed 01/24/19   Page 10 of 15   PageID #: 14

custody, or control of T-Mobile. Affiant also requests that the Court direct T-MOBILE to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-MOBILE's services, including by initiating a signal to determine the location of the Target Cell Phone on T-MOBILE's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

22. Your Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

23. Your Affiant further requests that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

**[ATTESTATION AND SIGNATURE ON THE FOLLOWING PAGE]**

Page **11** of **12**

Case 1:19-mj-00007-SKL    Document 2    Filed 01/24/19    Page 11 of 15    PageID #: 15

Respectfully submitted,

_____
Adam Baldwin
Special Agent, ATF


Subscribed and sworn to before me on this 24 day of January, 2019

_____
Susan K. Lee
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-314-8442 (TT1) | Case No. 1:19-mj- 7<br><br>**Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone with assigned call number 423-314-8442, whose wireless service provider is T-MOBILE.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of T-MOBILE.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 423-314-8442 (TT1) | Case No. 1:19-mj-7<br><br>**Filed Under Seal** |

## ATTACHMENT B

**Particular Things to be Seized**

1. All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Cell Phone on T-Mobile's network or with such other reference points as may be reasonably available, and at such

intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).